# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Richard Carraher,

Plaintiff,

Civ. No. 05-2385 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

v.

Target Corporation,

Defendant.

---

Steve G. Heikens, Heikens Law Practice, Minneapolis, Minnesota, for Plaintiff.

Joseph G. Schmitt, Donald M. Lewis, Nicole J. Druckrey, Halleland Lewis Nilan & Johnson, P.A., Minneapolis, Minnesota, for Defendant.

---

Plaintiff Richard "Tom" Carraher has sued his former employer, Target Corporation ("Target"), alleging that Target discriminated against him due to his age and retaliated against him for complaining about the purported discrimination.[1]  Currently pending before the Court is Target's Motion for Summary Judgment.  The crux of Target's Motion is that Carraher cannot demonstrate that Target's proffered reasons for its actions are pretextual.  For the reasons set forth below, the Court agrees with Target and will grant its Motion.

---

[1] Carraher also has alleged a breach of contract claim (Count VI), but states in his Memorandum in Opposition that he "will not pursue his contract theory."  (Mem. in Opp'n at 1 n.1.)  Accordingly, the Court deems this claim abandoned, and it will be dismissed.

## Background

Carraher is an executive recruiter who first interviewed for a position with Target in February 2003.  (Gilleece Dep. Tr. at 36; Carraher Dep. Tr. at 70-71.)  Although Carraher was not hired at that time, he impressed Target's management during his interview.  (Gilleece Dep. Tr. at 39, 45.)  Accordingly, in June 2003, Target hired him as a recruiter for "special projects," anticipating that he would later move into an executive recruiter position for Target's southern region ("Region 300").  (Id. at 38-40, 45.)[2]  In September 2003, Carraher became an executive recruiter for Region 300, which stretches from Texas to Florida.  (Carraher Dep. Tr. at 74.)  Carraher, however, worked out of Minneapolis, Minnesota.  (Id. at 133.)  Carraher's immediate supervisor in his new position was Denise Hunter.  (Gilleece Dep. Tr. at 42, 45-46.)

Carraher's employment with Target had less-than-auspicious beginnings.  In his first annual performance evaluation in April 2004, Hunter noted several deficiencies in Carraher's performance, including the poor quality of the candidates he had sourced and his lack of communication skills.  (Strong Dep. Ex. 21.)  Carraher's internal clients also expressed similar concerns about his performance.  (Carraher Dep. Ex. 7.)  Nevertheless,

---

[2] "Executive recruiters" locate (or "source") qualified candidates for the positions of Store Team Leaders (STLs) and high-potential Executive Team Leaders (ETLs) in Target stores. (Strong Dep. Tr. at 154.)  An STL manages a Target store, while an ETL oversees a specific area of a store's operations.  (Schwartz Dep. Tr. at 11-13.)  Generally, each Target store has one STL and four or more ETLs.  (Strong Dep. Tr. at 190-91.)  Executive recruiters source STL and ETL candidates for hiring managers and team leaders in particular geographic regions; those hiring managers and team leaders are the recruiter's internal "clients."  (Caspersen Dep. Tr. at 18.)

2

Hunter gave Carraher an overall performance rating of "Satisfactory Plus," a "solid" rating that entitled him to a salary increase.  (Id.; Strong Dep. Tr. at 252.)

In June 2004, Hunter left Target and was replaced by Kim Strong.  (Strong Dep. Tr. at 6, 62.)  Shortly after Strong assumed her position, she too began to receive complaints about Carraher's performance, including his failure to communicate with his internal clients and the dearth of qualified candidates he had sourced.  (Carraher Dep. Exs. 8, 10; Strong Dep. Tr. at 164-65, 169-70.)  Strong documented these complaints in Carraher's October 18, 2004 mid-year review.  (Strong Dep. Ex. 22.)  Following that review, Strong continued to receive criticism of Carraher's performance from his clients. (Carraher Dep. Ex. 14.)

Meanwhile, in August 2004, Dan Caspersen had become Target's Vice President for Stores Human Resources.  (Caspersen Dep. Tr. at 8.)  Upon assuming this position, Caspersen sought to fully "decentralize" Target's executive recruiting, because he did not believe that "centralized recruiting structures work."  (Caspersen Dep. Tr. at 18.)[3]  In other words, Caspersen wanted executive recruiters to work in the regions for which they were recruiting, rather than at a centralized location.  Caspersen set up a committee to review the issue, and full decentralization was formally approved by company management in October 2004, with an effective date of February 1, 2005.  (Strong Dep. Tr. at 73-74.)  As a result of the decentralization, Carraher's position was relocated to

---

[3] At that time, executive recruiting was already partially decentralized.  (Carraher Dep. Tr. at 132.)

Texas, the area for which he primarily recruited.  (Carraher Dep. Tr. at 21.)  At the time

the decision was made to fully decentralize executive recruiting, Carraher was the only

executive recruiter not working out of his assigned region.  (Id. at 132-33; Strong Dep.

Tr. at 177.)

In November 2004, Carraher became aware that Target was considering

decentralization.  He then contacted Strong and informed her that he preferred not to

move.  (Carraher Dep. Tr. at 149-50.)  Instead, Carraher decided to seek another position

with Target in Minneapolis.  (Id. at 150.)  Ultimately, Carraher sought four different

positions at Target's Minneapolis headquarters:

1.    Sourcing.  Carraher first proposed that Target create a new position for him

in Minneapolis in which he would source candidates nationwide through cold-calling.

(Strong Dep. Tr. at 105-07 & Ex. 9; Carraher Dep. Tr. at 39.)  Although it is not entirely

clear from the record, it appears that Target ultimately approved this position, but

changed it in two ways from that proposed by Carraher:  first, the position would focus on

Florida, a high-need area for the company at the time, and would only later support other

areas on an as-needed basis; and second, Carraher would be required to report to the

executive recruiter for Florida, someone with significantly less recruiting experience than

he had.  (Strong Dep. Tr. at 106-07, 109-10 & Exs. 9-10; Carraher Dep. Tr. at 154-57.)

Although this new position paid the same salary and had the same benefits as Carraher

was receiving at the time, he found the position unacceptable, in part, because it required

him to report to someone "far younger" than he was and was, in his opinion, a "demotion."  (Carraher Dep. Tr. at 39-40; Strong Decl. ¶ 3.)

2.      Distribution.  Carraher next sought a recruiting position in Target's distribution division.  He telephoned Cassie Nelson, Target's recruiter for distribution, and had a long discussion with her about the division's recruiting needs.  (Nelson Dep. Tr. at 33-34, 93; Carraher Dep. Tr. at 40; Carraher Aff. ¶ 8.)  Carraher claims that following that telephone call, Nelson informed him that distribution wanted to hire him, but that it was "taking longer . . . than expected."  (Carraher Aff. ¶ 9.)[4]  Ultimately, Carraher was not offered a recruiting position in distribution.

3.      Target.com.  On November 23, 2004, Carraher e-mailed Sue Lundquist, a recruiter for target.com, about a recruiting position.  (Lundquist Dep. Tr. at 28-29 & Ex. 1.)[5]  Lundquist met with Carraher on January 5, 2005; she had been unable to meet with him sooner because of the Thanksgiving and New Year's Day holidays and because she works only part-time.  (Id. at 47-48; Carraher Dep. Tr. at 190.)  At their meeting, Carraher expressed interest in a recruiting position that Lundquist was already about to fill. (Lundquist Dep. Tr. at 42-43, 45.)  After meeting with Carraher, Lundquist decided that Carraher would not be a good recruiting candidate for target.com and did not offer him a position.  (Id. at 47, 59.)

---

[4] Target disputes this contention and argues that Carraher never applied for a position in distribution.  (See Mem. in Opp'n at 11.)

[5] Neither party has explained what target.com is or how it relates to Target.

4.     <u>Pharmacy.</u>  In January 2005, Carraher contacted Tina Erickson, Target's pharmacy recruiting manager, about a recruiting position for Target pharmacies. According to Carraher, Erickson set up an interview for him with Tom Landis, head of pharmacy human resources, and Vic Antilley, a regional pharmacy leader.  (Carraher Aff. ¶ 21.)  However, that interview was subsequently canceled without explanation.  (Heikens Aff. Ex. 11; Carraher's Answer to Interrogatory No. 2.)  Carraher was not offered a pharmacy recruiting position.

Having been unable to locate another recruiting position with Target in Minneapolis, Carraher e-mailed Strong on January 24, 2005, and informed her that he was now interested in the possibility of relocating to Texas.  (Carraher Dep. Ex. 20.)  On January 27, 2005, Carraher met with Strong to discuss the issue.  According to Carraher, Strong presented him with only one option at that meeting: termination with severance. (Carraher Dep. Tr. at 166-68.)  Strong, on the other hand, asserts that she discussed not only severance at that meeting, but also (1) the prospect of Carraher relocating to Texas and (2) his proposed sourcing position (as modified) in Minneapolis.  (Strong Dep. Tr. at 71.)  Following the meeting, Strong left several voicemail messages to "follow up" with Carraher, but he never responded.  (<u>Id.</u> at 71, 90.)  Carraher failed to return to work at Target after February 4, 2005.  As a result, on March 4, 2005, Target terminated his employment.  (<u>Id.</u> at 70-71; Carraher Dep. Ex. 23.)

On February 2, 2005, Carraher sent a letter to Todd Blackwell, Target's Executive Vice President for Human Resources.  (Strong Dep. Ex. 16.)  In that letter, Carraher

6

alleged that his termination had been motivated by age bias;[6] in support of his allegation,

he pointed to comments purportedly made by several Target managers that he believed

suggest an age-discriminatory animus at the company.  Carraher, however, admits that he

never informed Strong, his supervisor, about the allegedly inappropriate comments.

(Carraher Dep. Tr. at 95-97, 99, 116-17, 127-28, 139.)  Rather, Carraher claims that he

had mentioned concerns of age-discrimination to Kelly DeMaegd – Carraher's official

"mentor" at Target – without mentioning the specifics of the comments he had allegedly

heard.  (Carraher Dep. Tr. at 103, 144-45.)

## Standard of Decision

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St.

Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must

view the evidence, and the inferences that may be reasonably drawn from it, in the light

most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d

721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir.

---

[6] Although his employment had not officially been terminated at that time, Carraher apparently believed that his employment had been terminated because his position had been relocated to Texas effective February 1, 2005.  (Strong Dep. Tr. at 73-74.)

1997).  The nonmoving party may not rest on mere allegations or denials, but must show

through the presentation of admissible evidence that specific facts exist creating a genuine

issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Krenik v.</u>

<u>County of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).

**Analysis**

Carraher has asserted claims of age discrimination and retaliation.  His age

discrimination claims arise from Target's (1) failure to hire him for another position in

Minneapolis after his executive recruiter position was relocated to Texas[7] and

(2) termination of his employment.  (Mem. in Opp'n at 9-28.)  His retaliation claims arise

out of his informal complaints of age discrimination to DeMaegd and his February 2,

2005, written complaint of age discrimination to Blackwell.  (<u>Id.</u> at 29-35.)

**I.      Age Discrimination**

The Age Discrimination in Employment Act ("ADEA") and the Minnesota Human

Rights Act ("MHRA") both forbid an employer from taking adverse employment actions

against an employee because of his age.  29 U.S.C. § 623(a)(1); Minn. Stat. § 363.03,

subd. 1(2)(c).  To establish a claim of intentional age discrimination, a plaintiff may

present direct evidence of such discrimination or may prove his claim through

circumstantial evidence.  <u>See</u> <u>Mayer v. Nextel West Corp.</u>, 318 F.3d 803, 806 (8th Cir.

---

[7] In his Memorandum in Opposition, Carraher appeared to argue that the relocation of his position to Texas was due to age discrimination.  At oral argument, however, Carraher conceded that he is not alleging that the relocation was discriminatory.

2003).  Where the plaintiff presents only circumstantial evidence of discrimination, the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973), applies.[8]  Here, Carraher offers only indirect evidence of discrimination.  Accordingly, the Court must apply the tripartite McDonnell Douglas burden-shifting framework for analyzing employment discrimination claims.

Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination.  Although the requirements of the prima facie case depend on the circumstances, a plaintiff generally must show that (1) he was a member of a protected class (in this case, over the age of forty); (2) the employer took some type of adverse employment action against him; (3) he was meeting his employer's reasonable expectations at the time of his termination; and (4) age was a factor in the employer's decision to take the adverse action.  Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003).  The fourth element of the prima facie case can be established with evidence that the plaintiff was replaced by someone substantially younger, Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035 (8th Cir. 2005), or with other evidence "adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion," O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (alteration in original) (internal quotation and emphasis omitted).

---

[8] Age discrimination claims under the MHRA are analyzed in the same fashion as claims under the ADEA.  Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003) (citation omitted).

Once the plaintiff establishes a prima facie case, the defendant must "articulate a legitimate non-discriminatory reason for the adverse employment action." Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1046 (8th Cir. 2003). If the defendant fulfills this second step, then the plaintiff must establish that the defendant's proffered reason is a mere pretext for discrimination. Id. Throughout this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citation omitted).

### A.    Prima Facie case

Carraher claims that Target has discriminated against him in two ways:  by failing to hire him for the other positions he sought in Minneapolis and by terminating his employment. Target concedes – by not having argued to the contrary – that Plaintiff has established a prima facie case with respect to each.

### B.    Legitimate, non-discriminatory reasons

Target has proffered legitimate, non-discriminatory reasons for the allegedly adverse employment actions. With respect to his termination, Target avers that Carraher failed to return to work after February 4, 2005. (Strong Dep. Tr. at 70.) With respect to its failures to hire, Target avers that:  Carraher rejected his own proposed sourcing position, as modified (Carraher Dep. Tr. at 39-40); no recruiting position was available in the distribution division at the time Carraher contacted Nelson, and Target has no record of Carraher ever having formally applied for such position (Nelson Dep. Tr. at 31, 33-34);

10

Carraher never interviewed with Landis or Antilley and, in any event, Landis did not consider Carraher a good pharmacy recruiter candidate because he thought that Carraher was unapproachable, reserved, and lacked leadership skills (Landis Decl. ¶¶ 2, 4; Antilley Decl. ¶ 2); and, after having interviewed Carraher, Lundquist did not consider him a good candidate for target.com because he had a poor attitude, had complained about searching for another position within the company, and had not typically been promoted by other employers (Lundquist Dep. Tr. at 59-65).

### C.   Pretext

Because Target has proffered legitimate, non-discriminatory reasons for each of the adverse employment actions, Carraher can avoid summary judgment only if the evidence (1) creates a fact issue as to whether Target's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment actions. Haas, 409 F.3d at 1035.  In attempting to satisfy this burden, Carraher points to a hodgepodge of facts.  Upon close scrutiny, however, those facts do not support Carraher's argument.

The crux of Carraher's argument is that Target's corporate culture favored young employees.  In support of this argument, Carraher argues that Target places a "great emphasis" on college campus recruiting; that a handful of Target managers purportedly made age-biased comments during Carraher's employment; and that recruiters are encouraged to select candidates fitting the "Target Brand," which Carraher argues is a mere proxy for young persons.  (Mem. in Opp'n at 17-27.)  Assuming these allegations to

11

be true, they are of no use to Carraher because he cannot establish any nexus between them and the adverse employment actions.  See Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 252 (8th Cir. 1995) ("[a] plaintiff who is trying to prove pretext must show that there is a causal relationship between evidence of an employer's discriminatory attitude and" the adverse employment actions suffered).  Carraher identifies several age-biased comments purportedly made by Target managers Lana Speed, Develle Turner, and Cindy Hudson, but he has proffered no evidence that those managers were decision-makers involved in any way in his adverse employment actions.  See Ghane v. West, 148 F.3d 979, 982 (8th Cir. 1998) (comment insufficient to show pretext because "there is no evidence that the remark was either made by a decision maker or made in connection with the decisional process").[9]  Similarly, Carraher has not shown (or even attempted to show) any connection between Target's college campus recruiting and its failure to hire Carraher for the jobs he sought or his termination.

Carraher also notes that Target managers have access to "Brass Ring" software, which permits Target employees to see an employment candidate's resume information in summary fashion.  (See Heikens Aff. Ex. 21.)  Carraher argues that Brass Ring is evidence of age bias because the "default" screen that appears when accessing a candidate's information through Brass Ring indicates the year that the candidate joined

---

[9] Moreover, the Eighth Circuit has recently noted that "a general statement regarding the company's willingness to hire younger workers . . . does not evince a discriminatory policy or practice."  Wittenburg v. Am. Express Fin. Advisors, Inc., __ F.3d __, No. 05-4038, 2006 WL 2771679, at *5 (8th Cir. Sept. 28, 2006).

the workforce.  (Mem. in Opp'n at 26.)  The year that an individual entered the

workforce, however, is not synonymous with that individual's age.  Regardless, Carraher

offers no evidence that any of the decision makers at issue accessed Brass Ring; indeed,

each specifically denied having done so.  (Landis Decl. ¶ 3; Antilley Decl. ¶ 3; Erickson

Decl. ¶ 6; Lundquist Dep. Tr. at 86; Nelson Dep. Tr. at 97.)

    The other facts alluded to by Carraher also do not aid his cause.  Carraher notes

that he was replaced by someone 28 years younger than he is and that each of the persons

hired for the jobs he did not get is substantially younger than he is.  (Mem. in Opp'n at

20.)  While these facts may be useful in establishing a prima facie case, Carraher cannot

use them to establish pretext.  See, e.g., Nelson v. J.C. Penney Co., 75 F.3d 343, 345-46

(8th Cir. 1996) (fact that plaintiff was replaced by substantially younger employee was

insufficient to establish pretext; "Such a fact is consistent with age discrimination, but it

cannot alone support a reasonable inference of it."); Holley v. Sanyo Mfg., Inc., 771 F.2d

1161, 1167-68 (8th Cir. 1985) (fact that plaintiff's duties were assumed by younger

individual insufficient to show proffered reasons were pretextual); Crumm v. Oce'-

Bruning, Inc., 892 F. Supp. 1236, 1243 (E.D. Mo. 1995) (fact that younger individual

replaced plaintiff was "germane to establishing a prima facie case of age discrimination,

but once established this fact alone does not prove that the defendant's articulated reason

is pretextual").[10]

---

    [10] See also Monaco v. Fuddruckers, Inc., 1 F.3d 658, 661 (7th Cir. 1993) ("The mere fact
that the employer may have hired a younger replacement is too insubstantial to support an

Carraher also argues that Target has a preference for younger executive recruiters, as evidenced by the fact that it hired ten new executive recruiters under the age of 40 in the months after his departure.  (Mem. in Opp'n at 21.)  The evidence belies this contention.  As Carraher admits, Target also hired two executive recruiters <u>over</u> the age of 40 during that same timeframe.  (<u>Id.</u>; Heikens Aff. Ex. 18.)  Moreover, Carraher ignores the fact that Target hired him in 2003 knowing that he was 56 years old.  These facts undermine Carraher's argument.[11]

Carraher also contends that Target's failure to investigate his complaints of age discrimination, in violation of its internal policies, is evidence of pretext.  (Mem. in Opp'n at 27.)  It is true that, in some instances, an employer's failure to follow its internal policies can be evidence of pretext.  <u>See, e.g.</u>, <u>Russell v. TG Mo. Corp.</u>, 340 F.3d 735,

---

inference of age discrimination."); <u>Chappell v. GTE Prods. Corp.</u>, 803 F.2d 261, 267 (6th Cir. 1986) ("The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination.").

[11] Carraher also points out that the average age of executive recruiters has dropped from 38.5 to 35.09 since February 1, 2005.  (Mem. in Opp'n at 22.)  Carraher asserts that this change "raises an eyebrow on the inference of whether Target has a preference for younger employees." (<u>Id.</u>)  The Court disagrees, for two reasons.  First, the change in average age is based on extremely small sample pools – 11 executive recruiters in February 2005 and 22 executive recruiters in December 2005.  Statistical differences in such small sample pools are not unexpected and are of little, if any, import.  <u>See, e.g.</u>, <u>Kesler v. BASF Corp.</u>, 240 F. Supp. 2d 956, 961 (S.D. Iowa 2002) (changes in average age in pools of 7 and 11 employees not "statistically significant in light of the size of the group[s]"); <u>Adams v. West Publ'g Co.</u>, 812 F. Supp. 925, 931 (D. Minn. 1993), <u>aff'd</u>, 25 F.3d 635 (8th Cir. 1994) (refusing to consider statistical evidence that 9 out of 23 persons transferred were over age of 55).  Second, the change in average age is small, especially given the size of the sample pools.  Such a small difference does not raise an inference of discrimination.  <u>See</u> <u>Kesler</u>, 240 F. Supp. 2d at 961 (no discriminatory motive evident in "small drop" in average age from 38 to 36 years).

746 (8th Cir. 2003).  Here, however, Carraher has failed to show that Target deviated

from its internal policies.  Indeed, he has failed to identify any particular policy or

procedure that required Target to investigate the unspecific claims of age discrimination

that he made to DeMaegd, who was Carraher's mentor, not his supervisor.  Nor does

Carraher proffer any evidence that it failed to investigate the claims made in his February

2, 2005, letter to Blackwell.[12]

Finally, Carraher argues that Target has offered conflicting reasons for the

termination of his employment and has alternately labeled that termination as both

voluntary and involuntary.  (Mem. in Opp'n at 18-19.)  These are distinctions without a

difference, however, because neither the conflicting explanations nor the labels suggest

that Carraher's termination was somehow motivated by his age.  See Kohrt v.

MidAmerican Energy Co., 364 F.3d 894, 898 (8th Cir. 2004) (affirming grant of

summary judgment to employer despite plaintiff's allegation that employer gave

conflicting reasons for its refusal to hire plaintiff, because plaintiff failed to connect

conflicting reasons to age discrimination).

At bottom, Carraher has simply "throw[n] strands of speculation on the wall [to]

see if any of them will stick."  Richardson v. MCF Stillwater, No. Civ. 04-4935, 2006

WL 47339, at *5 (D. Minn. Jan. 9, 2006) (Doty, J.).  When viewed in the light most

---

[12] Target has asserted the attorney-client privilege over the investigation into (and the results of) the complaints contained in the Blackwell letter.  Nevertheless, the evidence indicates that Target did, in fact, investigate Carraher's complaints.  (Strong Dep. Tr. at 146.)

favorable to Carraher, the evidence he points to, both individually and collectively, at best creates only a "weak issue of fact as to whether [Target's proffered] reason[s] w[ere] untrue." Reeves, 530 U.S. at 148. Accordingly, summary judgment for Target is warranted on Carraher's age-discrimination claims. Id.

## II.    Retaliation[13]

Carraher asserts that he was retaliated against because he complained of age discrimination to DeMaegd orally in October 2004 and complained again, in writing, to Blackwell in February 2005. (Mem. in Opp'n at 29.) In order to establish a prima facie case of retaliation, Carraher must show that he participated in a protected activity, that Target took adverse employment action against him, and that a causal connection exists between the two. Haas, 409 F.3d at 1036-37.

---

[13] Although the MHRA uses the word "reprisal" rather than "retaliation," an MHRA "reprisal" claim is analyzed under the same framework as an ADEA retaliation claim. Compare Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 454-55 (8th Cir. 1997) (analyzing ADEA retaliation claim under McDonnell Douglas framework) with Bergstrom-Ek v. Best Oil Co., 153 F.3d 851, 859 (8th Cir. 1998) (analyzing MHRA reprisal claim under McDonnell Douglas framework).

### A.     Complaints to DeMaegd

Carraher has failed to establish a prima facie case of retaliation with respect to his complaints to DeMaegd, because he cannot show the requisite nexus between those complaints and the adverse employment actions.  Indeed, Carraher has proffered no evidence indicating that DeMaegd was a decision-maker for, or was in any way involved in, the failure to hire him (or even interview him) for the other positions he sought in Minneapolis or the termination of his employment.  In fact, Carraher has proffered no evidence indicating that the decision-makers vis-a-vis the other positions he sought were even aware of his complaints to DeMaegd.

The best evidence Carraher can muster is that on or after October 22, 2004, DeMaegd informed Strong that Carraher would claim age discrimination if Strong continued to question Carraher's job performance.  (Strong Dep. Tr. at 269-70.)  Yet, Carraher has made no effort to link Strong's second-hand knowledge of his complaints with his March 2005 termination, the only adverse employment action in which Strong was involved.[14]

### B.     Complaints to Blackwell

---

[14] Carraher claims that he suffered an adverse employment action when Strong "conver[ted] the sourcing job proposal into a demotion." (Mem. in Opp'n at 30.) Strong, however, did not "convert" the position; rather, it was Caspersen who modified Carraher's proposal for the position (Strong Dep. Tr. at 106-07), and Carraher proffers no evidence that Caspersen was aware of his complaints to DeMaegd at that time. Moreover, the evidence does not suggest any age bias on Strong's part; indeed, it is undisputed that she gave Carraher permission to seek other positions at Target, provided positive references for him when he sought those positions, and recommended that Caspersen approve Carraher's proposed sourcing position. (Id. at 106, 163; Lundquist Dep. Tr. at 33-34, 39-40.)

17

Carraher has established a prima facie case of retaliation with respect to his complaints to Blackwell in February 2005.  Approximately four weeks after Carraher sent his letter to Blackwell, his employment was terminated.  An adverse employment action occurring in such close proximity to a protected activity suffices to establish the causal connection necessary for a prima facie case of retaliation.  See Arraleh v. County of Ramsey, ___ F.3d ___, 2006 WL 2561240, at *7 (8th Cir. Sept. 7, 2006) (three-week gap between protected activity and adverse employment action sufficient to establish causal connection for prima facie case of retaliation).[15]

Target has proffered a legitimate, non-discriminatory reason for its termination of Carraher's employment:  his failure to return to work after February 4, 2005.  (Strong Dep. Tr. at 70.)[16]  Carraher, therefore, must establish that Target's proffered reason for his termination is pretextual in order to avoid summary judgment on this claim.  In order to show pretext, however, Carraher relies on the same facts that the Court has already deemed insufficient to show pretext in the context of Carraher's discrimination claims.

---

[15] Of the adverse employment actions about which Carraher complains, only his termination occurred after he sent the February 2, 2005 letter.

[16] Carraher contends that he was taking vacation starting on February 4, 2005, and that Target was aware of this fact.  He argues, therefore, that Target's proffered non-discriminatory reason is pretextual. (Mem. in Opp'n at 6, 34.)  Even if Carraher is correct, however, at best he has merely shown that Target's proffered reason is false; he has *not* proffered evidence creating a "reasonable inference that age was a determinative factor" in his termination.  Haas, 409 F.3d at 1035.

18

(Mem. in Opp'n at 33-35.)  Accordingly, the Court concludes that Carraher has failed to establish that Target's proffered reason for his termination is pretextual.[17]

### Conclusion

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendant Target Corporation's Motion for Summary Judgment (Doc. No. 26) is **GRANTED** and Plaintiff Richard Carraher's Amended Complaint (Doc. No. 10) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 5, 2006                                s/ Richard H. Kyle
                                                      RICHARD H. KYLE
                                                      United States District Judge

---

[17] This logic is equally applicable to Carraher's retaliation claim with respect to his complaints to DeMaegd.  In other words, even were the Court to assume *arguendo* that Carraher had stated a prima facie case with respect to those complaints, Target would nevertheless be entitled to summary judgment because Carraher cannot show that Target's proffered reasons for its actions are pretextual.

19